IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CS-ALABASTER, L.L.C., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 00-PWG-1291-S |
| SOMAX MANAGEMENT CO., and RICHARD ZARETSKY, | ) |
| Defendants. | ) |

FILED 03 APR 29 PM 1:25 U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED APR 2 9 2003

## MEMORANDUM OF OPINION

This matter is before the court for consideration of defendant Richard P. Zaretsky's Motion to Dismiss for Lack of Personal Jurisdiction. (Document #37).  The jurisdiction of the United States District Court for the Northern District of Alabama was invoked pursuant to 28 U.S.C. § 1332 with complete diversity alleged between the parties.  The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.

## BACKGROUND

On December 10, 1999 CS-Alabaster entered into a written real estate sales contract with defendant Somax.  Defendant Zaretsky, president of Somax, signed the contract on behalf of Somax.  The sales contract provided for a purchase price of $2,336,000; $25,000 earnest money upon contract execution; an additional $25,000 earnest money within three days after the inspection period; a balance of $2,286,000.00 at closing.  CS-Alabaster states that the first earnest money payment was due December 10, 1999, and the second was due no later than January 3, 2000.  The two earnest money payments were to be made to a title company; however, the contract did not specify the title company to whom the money would be paid.  The complaint in three substantive



counts sought damages, for breach of contract (count I); fraud and misrepresentation (count II); and suppression (count III). Only counts II and III contain allegations against Zaretsky.

PERSONAL JURISDICTION

Defendant Zaretsky contends that this court lacks *in personam* jurisdiction over him. Specifically, Zaretsky argues that this court has neither general nor specific jurisdiction over him.[1] The complaint alleged:

> 4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a) as their [sic] is diversity of citizenship between the parties and the amount in controversy is in excess of $75,000 exclusive of interest and costs.

(Document #1, ¶ 4).

As this action is predicated upon the diversity jurisdiction of this court, the long-arm statute of the state of Alabama is material to a consideration of the personal jurisdiction inquiry. The analysis begins as a two-step procedure. First, personal jurisdiction over a non-resident defendant by a federal court sitting as a diversity court is proper only if authorized by state law. *Cable/Home Communications Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990); *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 919 (11th Cir. 1989). If a basis for personal jurisdiction exists under the forum state's long-arm statute, the federal court must then consider whether the exercise of personal jurisdiction would be consistent with federal due process

---

[1] The Supreme Court has identified two types of personal jurisdiction: specific and general. See *Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 nn. 8 and 9, 104 S.Ct. 1868, 1872 nn. 8 and 9, 80 L.Ed.2d 404 (1984). General jurisdiction arises from a party's frequent contacts with the forum state unrelated to the litigation. See, *id*. at 414 n.9, 104 S.Ct. at 1872 n.9. Zaretsky has submitted evidence establishing that the only contact he has had with the State of Alabama relates to the contract at issue here. Indeed, CS-Alabaster's complaint and objection do not suggest that jurisdiction over Zaretsky is a product of general jurisdiction jurisprudence. Accordingly, the focus of this order is upon specific jurisdiction and the corresponding minimum contacts analysis required.

requirements. The Due Process Clause of the Fourteenth Amendment requires sufficient minimum contacts between the forum state and the non-resident defendant so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Company v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); *Cable/Home Communications Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919. Only if both prongs of the analysis are answered in the affirmative may a federal or state court exercise personal jurisdiction over a non-resident defendant. *Id.* at 919.

The initial inquiry then concerns the reach of the Alabama long-arm statute. The Alabama long-arm statute provides, in part, as follows:

> A person has sufficient contacts with the state when that person ... otherwise having some minimum contact with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action ... so long as the prosecution of the action against a person in this state is not inconsistent with the Constitution of this state or the Constitution of the United States.

*Alabama Rule of Civil Procedure* 4.2(a)(2)(I).

Consequently, the reach of Alabama's long-arm jurisdiction extends to the full limits of federal due process. See *Martin v. Robbins*, 628 So.2d 614, 617 (Ala. 1993); *Ex parte Pope Chevrolet, Inc.*, 555 So.2d 109, 110 (Ala. 1989); *Dillon Equities v. Palmer and Cay, Inc.*, 501 So.2d 459, 461 (Ala. 1986). See also *Brown v. Astron Enterprises, Inc.*, 989 F. Supp. 1399, 1404 (N.D. AL. 1997). Because Alabama's long-arm jurisdiction extends to the limits of federal due process, it is unnecessary to apply state law. *Morris v. SSE, Inc.*, 843 F.2d 489, 492, n. 3 (11th Cir. 1988). The

state law and the due process analysis collapse into a single inquiry. See *Brown*, 989 F. Supp. at 1404.

It is well established that "[t]he Due Process Clause ... constrains a federal court's power to require personal jurisdiction" over a non-resident defendant. *In re Chase and Sanborn Corp.*, 835 F.2d 1341, 1344 (11th Cir. 1988), *rev'd on other grounds sub nom Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). The exercise of personal jurisdiction comports with due process when "(1) the non-resident defendant has purposefully established minimum contacts with the forum ... and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Francosteel Corporation v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994); *accord Vermulen v. Renault, USA, Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993), *cert. denied*, 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993). To constitute minimum contacts for the purposes of specific jurisdiction, the defendant's contact with the applicable forum must satisfy three criteria.

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some acts by which the defendant purposefully avails itself of the privilege of conducting activities within the forum ..., thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

*Vermulen*, 985 F.2d at 1546 (citations and quotation marks omitted).

"JURISDICTIONAL FACTS"

The burden is on plaintiff CS-Alabaster to establish a *prima facie* case of personal jurisdiction over the non-resident defendant. A *prima facie* case is established if CS-Alabaster

4

presents sufficient evidence to withstand a motion for directed verdict. The court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits. Where defendant submits affidavits that contradict the facts alleged by plaintiff, plaintiff then has the burden to produce evidence supporting jurisdiction.[2/] *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Finally, where the plaintiff's complaint and the defendant's affidavits or depositions conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); see also *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

The complaint in this action specifically acknowledges that the contract between CS-Alabaster and Somax related to real estate located in Shelby County Alabama. (Document #1, ¶ 6). The complaint also makes clear that the individual defendant Richard P. Zaretsky is a resident of the State of Florida. In the fraud and misrepresentation count, CS avers:

> 7. Subsequent to the execution of the Contract by both parties, Somax, by and through its agent, servant and/or employee, Zaretsky, and Richard P. Zaretsky individually, misrepresented to CS that the initial Earnest Money, in the amount of $25,000, had been placed in the appropriate escrow account with the Title Company as specifically required under the terms and conditions of the Contract, when, in fact, neither Somax or Zaretsky placed any sum of money in any escrow account ....

In the suppression count, CS avers:

> 11. Subsequent to the execution of the Contract by both parties, Somax and Zaretsky suppressed from CS the fact that Somax and Zaretsky failed to deposit the initial Earnest Money, in the amount of $25,000, in

---

[2/] If the defendant's affidavits are merely conclusory assertions that defendant is not subject to jurisdiction, the burden does not shift back to plaintiff. *Meier, supra.*

5

>the appropriate escrow account with the Title Company as specifically required under the terms and conditions of the Contract and had otherwise failed to perform any of its contractual obligations from the time of execution of the contract through the time of expiration of the Inspection Period.[3/]

## MINIMUM CONTACTS

>Plaintiff argues that Zaretsky has sufficient minimum contacts with Alabama:

>>In this case, Zaretsky sent a contract which he had signed to CS-Alabaster. He visited the State for the purpose of inspecting the subject property. Zaretsky also attempted to negotiate the restructured purchase price. Consequently, Zaretsky has sufficient minimum contacts in Alabama.

>>Zaretsky played an integral part in the fraud against Plaintiff. ... Specifically, Zaretsky signed the subject sales contract.... He then continued to demonstrate an intent to carry out the subject contract; however, he knew at all times that the two earnest money deposits required by the contract had not been made. ... Plaintiff relied upon Zaretsky's assurances that he was "ready to proceed," as well as its justified belief

---

[3/]   The suppression count further alleged:
>12. Somax and Zaretsky further suppressed from CS the fact that it did not have the financial means necessary to purchase the Real Estate at the time of execution of the contract and no legitimate means for payment of the Purchase Price at the time of closing as set forth in the Contract despite the fact that there was no contingency contained in the contract or amendment to the contract which, in any way, relieved Somax from performance under the contract should it fail to obtain appropriate financing or otherwise be unable to pay the Purchase Price.

In his affidavit, Zaretsky stated: "8. Plaintiff was fully aware that Somax was going to use outside financing for this purchase." In Exhibit II, a fax memorandum dated December 10, 1999 from Zaretsky to Wade Lennox, plaintiff's agent stated in pertinent part: "Attached is executed contract by Buyer. I have changed the closing date after conversations with Ed Isola and Steve Lewinstein regarding financing timing ..."

In response to the motion to dismiss for lack of personal jurisdiction, plaintiff does not refer to the alleged suppression of the fact that purchase was to be accomplished by financing nor does plaintiff submit any evidence to counter defendant's affidavit and exhibit II. It therefore appears that plaintiff has abandoned the suppression count as it relates to the alleged suppression of the fact that Somax would have to finance the purchase.

6

that the earnest money had been deposited as required by the contract.

Zaretsky knew or should have known what the consequences of his actions would be, and must certainly have expected that a lawsuit would be filed against him in this State.

Zaretsky has submitted an affidavit in support of his Motion to Dismiss for Lack of Personal Jurisdiction stating in pertinent part:

> 4. The only time I have ever been in the State of Alabama was on December 12, 1999, when I stopped there to visit the subject property on behalf of Somax while on my way to an appointment in Mississippi. I have not and do not engage in any business or business ventures within the State of Alabama.
>
> 5. On December 10, 1999, I executed the subject Sales Contract on behalf of Somax ...
>
> 6. At no time did I represent to Plaintiff or any agent acting on its behalf that the deposit referenced in the Sales Contract had been made or was going to be made. To the contrary, I advised Mark Peeples, who was Plaintiff's representative, during the December 12 visit that while Somax was interested in making the purchase, that because of rising interest rates, Somax would not proceed with the Contract unless the price was adjusted to a new amount, which amount when applied against the purchase financing that would be available to Somax, would yield the same yield that was expressed to Somax when the property offering was originally made.
>
> 7. Mr. Peeples acknowledged the concern that was raised with regard to the rising cost of financing but also said that he would be away for the year-end holidays and the issue of pricing would have to be addressed in the new year. I advised him that in the meantime Somax would work with its broker, Steve Hougland, to come up with a new pricing formula.
> ....

7

> 10. On December 15, 1999, I received by facsimile a copy of the Contract which had been executed by the Seller.
>
> 11. After returning to Florida, I noticed that paragraph 12 of the Contract was blank with respect to the identity of the escrow agent to whom a deposit was to be made. I made an inquiry and received the fax transmittal from Wade Lennox on December 17 .... . I made this inquiry so I would have the information in the event that an agreeable price arrangement could be reached. I again reiterate that no representation was made that the deposit had been made or was going to be made.

When a forum seeks to assert specific personal jurisdiction over a non-resident defendant, due process requires that the defendant have "fair warning," that a particular activity may subject him to a foreign sovereign. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum state and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Burger King*, 471 U.S. at 472, quoting *Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Additionally, the defendant's conduct in connection with the forum must be of such a character that he should reasonably anticipate being haled in the court there. *Burger King*, 471 U.S. at 474; *Worldwide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The purpose of the latter requirement is to assure that the defendant will not be haled into a jurisdiction as a result of random or attenuated context, or because of the unilateral activity of a third person. *Burger King*, 471 U.S. at 475; *Keeton*, 465 U.S. at 774).

8

Defendant has affirmatively sworn that he did not misrepresent that the escrow payments had been or would be made.[4/] In response, plaintiff has not identified any active misrepresentation but instead plaintiff avers that "plaintiff relied upon Zaretsky's assurances that he was 'ready to proceed,' as well as its justified belief that the earnest money had been deposited as required by contract." (Document #43, p. 6). Plaintiff cites to Zaretsky's Exhibit V as evidence of Zaretsky's assurances that he was "ready to proceed;" however, Exhibit V clearly indicates that Zaretsky was ready to proceed only if the price was restructured.[5/] While plaintiff further avers that plaintiff was notified for the first time on January 7, 2000 that the price needed to be restructured (document #43, p. 2), this assertion is directly at odds with plaintiff's position that Zaretsky continued discussions with plaintiff regarding restructuring of the purchase price knowing that the earnest money deposits had not been made and that Zaretsky suppressed that information and plaintiff was not notified of the fact that earnest money deposits had not been made until January 7, 2000. (Document #43, p. 5). Further, according to the uncontroverted affidavit of Zaretsky, Zaretsky told Peeples on December 12, 1999 that Somax would not proceed with the Contract unless the price was adjusted to a new amount. Zaretsky affidavit, ¶ 6. There was no representation that the deposit referenced in the sales contract had been made or was going to be made. Zaretsky affidavit, ¶ 6. Further, Somax was unable to make the first deposit upon execution of the contract because the contract did not identify the escrow agent. Zaretsky first noticed that the contract did

---

[4/] With respect to paragraph six of defendant Zaretsky's affidavit, the second sentence was a non sequitur to the first. Merely advising plaintiff's representative of Somax's reluctance to proceed with the contract unless the price was adjusted would not have put plaintiff on notice that the escrow payments would not be made. Defendant has not identified any language within the sales contract that would relieve Somax of its obligation to make escrow payments merely because Somax was considering not going through with the purchase.

[5/] Exhibit V is the January 7, 2000 communication from Wade Lennox, plaintiff's agent, to Mark Peeples, plaintiff's representative, and Arthur Smith.

not identify the escrow agent on or after December 15, 1999 and inquired as to the identity of the escrow agent. On December 17, 1999, Lennox, plaintiff's agent, provided Zaretsky with the escrow agent information. Plaintiff, or its agent, was clearly aware that the first escrow payment had not been made as provided in the contract as it had not been made upon execution of the contract. The agent was further aware that the initial escrow payment had still not been made as late as December 17, 1999, the date that it provided the escrow agent information to Zaretsky. While CS assumed that such an inquiry meant that Somax intended to make the escrow deposit, there was no active misrepresentation or suppression that the escrow deposit would or would not be made. CS's assumption is irrelevant to the question of whether an Alabama court could exercise personal jurisdiction over Zaretsky. *Elliott v. Van Kleef*, 830 So.2d 726, 731 (Ala. 2002).

Generally, silence does not constitute fraud; however, under Alabama law, a duty to disclose can arise from the confidential relationship of the parties or from the particular circumstances of the case. *State Farm Fire & Casualty Co. v. Slade*, 747 So.2d 293, 324 (Ala. 1999). There is no allegation or evidence that the relationship between CS and Zaretsky was a confidential one. Further, CS has not argued that a duty to disclose arose from the circumstances of the case. In *Slade, supra*, the court reiterated the facts that must be considered in ascertaining whether the circumstances of the case created a duty to disclose: "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) customs of the trade; and (6) other relevant circumstances." The only circumstances that are apparent from the pleadings and exhibits before this court relate to the value of the particular fact allegedly suppressed – that is, that the escrow payments had not been made— and plaintiff's opportunity to ascertain the fact. Clearly, plaintiff placed much value on

whether the escrow payments had or had not been made; however, because plaintiff chose the escrow agent, there was certainly no reason that plaintiff was unable to inquire of the escrow agent concerning receipt of the escrow payments. Defendant had no duty to disclose that earnest escrow payments had not been made.

Based upon the undisputed facts before this court, defendant Zaretsky's limited conduct in connection with Alabama was not of such a character that he should reasonably anticipate being haled into court in Alabama.

Because the court has determined that the requisite minimum contacts do not exist, the court need not apply the second prong of *International Shoe* and decide whether the forum's exercise of personal jurisdiction over the non-resident defendant would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. See also, *Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir. 1988).

Based on the foregoing, defendant Richard Zaretsky's Motion to Dismiss for Lack of Personal Jurisdiction is due to be granted. A separate order consistent with this memorandum opinion will be entered simultaneously herewith.

DONE this the 27th day of April, 2003.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE